McKinney, J.
delivered the opinion of the court.
This bill is brought for the recission of a contract, for the purchase of two tracts of land, entered into between the complainant and John Sharp, the defendant’s testator.
It appears, that on the 6th day of February, 1838, John Sharp bargained and sold to the complainant, two tracts of land, adjoining each other, situate in Sevier county; the one tract containing ninety-seven acres, and the other sixty acres. The consideration agreed to be paid by the complainant for said lands was $300, for which he executed five several notes, each for the sum of $60, payable at different times, the last falling due on the 1st day of December, 1843.
A bond, or covenant to convey, was executed by Sharp at the time of the contract, and it is stipulated therein that, “the said John Sharp, his heirs, executors or administrators, shall *117 and will make, execute and deliver to the said John Cunningham, his heirs or assigns, good and sufficient deeds of conveyance of, and to said two tracts of land, so soon as all the before mentioned payments are punctually made.”
John Sharp died before payment of any part of the purchase money ; and after the notes all fell due, his executors sued and obtained judgments thereon before a justice of the peace of Sevier county, on the 20th September, 1844, for about the sum of $411 52.
This bill, which was filed on the 15th April, 1845, seeks to enjoin said judgments, and to obtain a recission of said contract. Upon the pleadings and proof in the cause, two distinct grounds for the recission of the contract are assumed. 1st. That at the time of the contract, the mental state or condition of the complainant, was such as to render him wholly incapable of making a valid or binding contract; and that advantage was taken of his incapacity to impose upon him two pieces of poor land, at a price greatly exceeding their real value. 2d. The inability of Sharp to comply with the contract on his part, for want of any valid title to the ninety-seven acre tract bargained and sold to complainant.
The first ground relied upon, is not, in our opinion, maintained by the proof in this record. It may be a matter of serious doubt, from the testimony, whether the complainant’s mind, at the time of the contract, had been fully restored to all its original vigor. Still, we think it clear, that his mental capacity was fully adequate to the transaction of all ordinary business; and that, upon this ground, the transaction in question cannot be impeached.
It remains to be enquired whether, upon the second ground, the complainant has made out a case entitling him to the relief prayed for. In the title bond, before referred to, executed to the complainant by John Sharp, the latter sets forth his title to the ninety-seven acre tract of land, and shows ■ how *118 that title was derived. The recital is as follows, viz: “Being a tract of land granted to Hosea Rose, assignee of Jonathan Done, and conveyed from said Hosea Rose to McKinsey Rose, and from McKinsey Rose to the above hound John Sharp,” &c. The defendants in their answer to the bill, insist that the title is indisputably good to said tract of land. But upon a reference to the matter, the only title produced, so far as respects the ninety-seven acre tract, was the grant to Hosea Rose, and the deed of conveyance from him to McKinsey Rose — no conveyance whatever from the latter to John Sharp, as recited in the title bond has been produced. There is parol evidence in the record which tends to establish, that McKinsey Rose conveyed said tract of land to John Sharp, to secure a debt due to the latter from the former, and that Sharp took possession of said tract of land upwards of twenty years ago, and retained the possession thereof until the time of the sale to complainant. But this deed of conveyance, if indeed such a conveyance ever existed, seems not to have been registered, and upon the most diligent search is not to be found.
Upon this state of the tacts, the counsel for the defendants insists, that the complainant ought to be repelled, because, as is argued, by operation of the statute of limitations, Sharp had acquired a valid and indefeasible title to said tract of land. This proposition we think wholly untenable. All the books concur in the principle, that a purchaser of real estate will not be compelled to accept a doubtful title.
In this case, no conveyance to Sharp is, or can be, produced ; and whether such a conveyance ever existed, is a matter not absolutely certain. And his possession of the land, however long it may have continued, if not under or by virtue of some assurance purporting to convey an estate in fee simple, could not have the effect of vesting him with title. The utmost effect of such possession, under the second section of the act of 1819, would be merely to vest him with a pos- *119 sessory right sufficient to bar the action of the legal owner.
But, assuming the existence of such conveyance, from the proof in the cause, it was not an absolute conveyance, but merely a mortgage or security for a debt due to Sharp. And for anything appearing in the record before us, the equity of redemption of the mortgagor may still exist and remain subject to be enforced. But whether this be so or not, it is sufficient for the complainant that the title offered is not shown to bo a valid legal title, free from all reasonable doubt or embarrassment. It is laid down in Sugden on Vendors, (6 American Ed.) 2 vol., 124 top, that if any person has an interest in, or claim upon the estate, which he may enforce, a purchaser cannot be compelled to take the estate, however improbable it may be that the right will be exercised. And in the case of Eyton vs. Dicken, 4 Price 303, it was held, that where the evidence of title was merely that of long possession, the purchaser would not be compelled to accept the title. 2 Sug. on Vend. 125.
Again: The counsel for the defendants insists, that upon the proper construction of the covenant executed by Sharp, no decree can be made in favor of the complainant. It is argued that the stipulation in the covenant to execute and deliver to the complainant “good and sufficient deeds of conveyance of, and to said two tracts of land,” relates merely to the sufficiency of the deeds, in point of law, to transfer to the complainant whatever right, if any, Sharp had in said lands; or, in other words, that the condition to execute good and sufficient deeds of conveyance, has reference only to the form of the deeds to be executed, and not to the title to be conveyed ¿ and so it was held by the chancellor.
This position is erroneous. The cases referred to in support of it, so far as we have had opportunity of examining them, are altogether inapplicable to the case under consideration.
*120 The case of Gazely vs. Price, 16 Johns. Rep. 268, Parker vs. Parmele, 20 Johns. Rep. 130, and other cases cited from the New York Reports, were actions at law, founded upon the covenent to convey. But these cases, while they maintain the rule of construction contended for by the defendant’s counsel, as the rule which prevails at law, expressly concede that a different rule has been established in equity. 20 Johns. R. 130. And whether correctly decided or not, they do not, therefore, support the argument urged on behalf of the defendants.
A court of equity, in such cases, looks not to the mere form or phraseology of the covenant; but to its substance and true meaning, in arriving at which, it is guided by the intention and understanding of the parties to the contract.
What then is the proper meaning and construction of the covenant to execute “good and sufficient deeds of conveyance of, and to said two tracts of land”? Courts of equity require a substantial performance of all contracts and agreements, not one merely colorable* We hold, therefore, that the covenant in question has refer.feace, not merely to the instrument of conveyance, but likewfee to the title to be conveyed; and that it created an obligaron on the part of Sharp to execute deeds of conveyance, not only sufficient in point of form, but fully operative, in effect, to pass to and vest the complainant with an indefeasible fee simple estate. We do not deem it necessary to decide whether or not the words of the covenant, in this case, imply a warranty; because there is no question but that an estate in fee may be created by a conveyance without warranty, express or implied. We go no further than to assert the general principle above stated, a principle amply sustained as well by reason as by authority. In Comyn’s Dig. (Condition, H.) it is laid down, that “a condition to make an assurance, means an effectual and operative assurance,” Kent Ch. J. in delivering the unanimous judgment of the *121 court of errors, in the case of Clute vs. Robinson, on an appeal from the court of chancery, (2 Johns Rep. 595,) says, “that a covenant to execute and deliver a good and sufficient deed of a piece of land, does not mean merely a conveyance good in point of form. That would be a covenant without substance. But it means an operative conveyance; one that carries with it a good and sufficient title to the lands to be conveyed.” And the correctness of this proposition is affirmed by Spencer Ch. J. in the case of Parker vs. Parmele, 20 Johns Rep. 130. Other authorities might be cited upon this point if necessary.
It is further insisted upon, by the counsel for defendants, that as two tracts are embraced in the covenant, and the title to one of them is unquestioned, the contract, at most, ought only to be rescinded so far as respects the other tract. The contrary is the established doctrine of courts of equity. The general rule is, that the purchaser is entitled to the specific property for which he contracted. And if a good title can be made to part only, he will not be compelled to accept a title for such part, with an abatement of the purchase money, or compensation for the deficiency, unless the deficiency be so immaterial as not to affect the inducement to the purchase. 8 Hum. 516.
The result is, that the complainant is entitled to have the contract rescinded in ¡fofo. The decree of the chancellor will be reversed, and a decree will be made rescinding the contract, and enjoining the judgments in the bill mentioned. An account will be taken of the reasonable rents of the lands during the complainant’s occupation, with which he shall be charged; also of all such improvements made by him, as were of a character to enhance the value of the premises, with which he shall be credited. The costs will be paid equally by the complainant and defendants.